Co-operative Life Association of Mississippi v. Sarah E. McConnico.

1. Life Insurance Agent. *Powers.*

The powers of an agent to take applications for insurance and forward them are different from those of an agent to make contracts of insurance. The duties of the former generally terminate when the contract is effected.

2. Same. *Agency. Principal not bound, when.*

A person having notice that an agent with whom he is dealing is acting beyond the scope of his authority, cannot hold the principal. The promise of such agent to a policy-holder, that he will pay such premiums as may fall due and become debtor therefor to the company, is of itself notice that the agent is acting outside of his authority; and the principal is not bound to accept the agent instead of the policy-holder as his debtor, unless he, with full knowledge of what the agent has done, affirms or ratifies it.

3. Same. *Agency. When principal bound.*

Where agents, without express authority, assume to act for their principals, the latter will be bound, if, with knowledge of such assumptions, they acquiesce in and receive the benefit of such acts; and, from a continuous course of such dealings, the public will be at liberty to deal with the agents as having original authority to perform the acts, and the principals will be estopped to deny it.

4. Same. *Agent. Waiver of conditions.*

An agent with full authority may, under many circumstances, waive performance of conditions precedent; but, where an unwarranted assumption of authority is established only by acquiescence, the unauthorized waiver, by such agent, cannot bind a principal who never heard of or acquiesced in such waiver.

Error to the Circuit Court of Montgomery County.

Hon. O. Davis, Judge.

The facts necessary to an understanding of the principles of law decided are fully stated in the opinion of the court.

The following instructions were given for the plaintiff below: —

1. If the jury believe from the evidence that Duncan was acting as the general agent for the defendant, and that these acts were beneficial and known to the defendant, and the

defendant with this knowledge accepted the benefits resulting from these acts, the defendant is bound by them, and cannot deny such agency.

2. If the jury believe from the evidence that Duncan was the general agent of the defendant, by the defendant's appointment, or that he acted as the general agent of the defendant, with the knowledge and sanction of the defendant, and by his acts as such agent, within the apparent scope of his agency, the said A. J. McConnico was prevented from making his annual payment for 1874, or was induced not to pay by the promise of said agent, if made within the apparent scope of his agency, that he, said agent, would make said payment for him, then the plaintiff is entitled to recover.

3. If the jury should believe from the evidence that Duncan exceeded his powers as agent, and habitually received mortuary fees and annual dues to the defendant, with the defendant's knowledge, and that the defendant received said mortuary fees and annual dues from said Duncan, and did not disaffirm the acts of said Duncan in receiving the same, Duncan then became the agent of the defendant for receiving mortuary fees and annual dues, and the defendant is precluded from denying such agency by the acts of said Duncan in receiving the same, so far as concerns third parties dealing with said Duncan.

4. If the jury believe from the evidence that Duncan was the agent of the defendant to receive mortuary fees and annual dues for the defendant, either by actual license by the defendant, or by a habitual course of conduct by said Duncan, which conduct was known to and approved by the defendant, and that an agreement was made between said Duncan and A. J. McConnico, while said Duncan was so acting, by the terms of which agreement the said Duncan promised the said A. J. McConnico to become responsible for or to pay the defendant the amount of said mortuary fees and annual dues, and would hold said McConnico his (Duncan's) personal debtor for the amount of such payment, then such agreement would be a waiver upon the part of the defendant of the payment of such mortuary fees and annual dues by said McConnico, and the jury will find for the plaintiff.

The following instruction asked by the defendant below was refused : —

4. A person dealing with an agent, and having notice that such agent is acting outside the scope of his authority, does not bind the principal.   A promise of an agent of an insurance company, to a person holding a policy in such company, that he will pay such premiums as may fall due, and become debtor therefor to the company, is of itself notice to such person that such agent is acting outside of his authority, and in bad faith to his principal, and especially is this so in this case, where the power of attorney put in evidence by the plaintiff makes all money coming into the agent's hands trust funds ; and such principal is not bound to accept the agent instead of the policy-holder as its debtor, and is not bound by the acts of such agent, unless, with full knowledge of what such agent has done, the principal affirms or ratifies it.   The powers of an agent to take applications for insurance, and forward, are different from those of an agent to make contracts of insurance : the duties of the former generally terminate when the contract is effected.

The additional fact is stated that Duncan was appointed agent for a large number of counties in north Mississippi, to receive and forward applications for insurance and to appoint sub-agents for this purpose, but without any further power to them or to Duncan.

The plaintiff below had verdict.

Motion was made for new trial, which was overruled.

The following assignment of errors, with others, was made, viz. : —

That the court below erred in giving the plaintiff's charges and refusing the defendant's fourth charge.

*W. R. Barksdale,* for the plaintiff in error.

Whenever a person dealing with an agent has notice that such agent is using his trust relation for his benefit, or employing funds of his principal for his private advantage, such party so dealing with such agent is thereby notified that he is acting beyond the scope of his authority, and the principal is not bound.   Story on Partnership, 128, 133 ; Story on Agency, §§ 125, 165.

The same rule obtains in cases where an administrator uses trust funds.  *Boyer* v. *Hodges*, 45 Miss. 79, 80 ; *Rosser* v. *Leatherman*, 4 How. (Miss.) 237 ; *Miller* v. *Helm*, 2 S. & M. 694.

Certainly the same rule should be applied where an insurance agent attempts to pay his individual debt, by assuming for this purpose to pay the dues of a policy-holder.

Besides, the policy-holder is equally governed by the familiar principle that those who deal with an agent or trustee must know the extent of the delegated power.  *McLemore* v. *Hawkins*, 46 Miss. 721.

An agent, with power to effect insurance, has full power to waive conditions and to correct an error in the policy after its issue.    Bliss on Life Insurance, §§ 279, 296, 300.

Counsel reviewed the case of *Banton* v. *Am. Life Ins. Co.*, 25 Conn. 542, and insisted that it did not meet or support the case before the court.

*Walter & Walter*, for the defendant in error.

The knowledge of a life insurance agent is the knowledge of his principal.    Bliss on Life Insurance, §§ 83, 271 ; *Pilkington* v. *Nat. Life Ins. Co.*, 55 Mo. 172 ; *Ins. Co.* v. *Hall*, 12 Mich. 202 ; *Viel* v. *Ins. Co.*, 26 Iowa, 9.

A ratification of the acts of an agent can be effected by silence as well as by direct approval.    *Bird* v. *Brown*, 14 Jur. 132.

A special agent may act beyond his powers, and if the principal knows it and does not disavow the action, the agent will bind him by this enlarged action.    *Farmers' Ins. Co.* v. *Taylor*, 73 Penn. 342 ; *Am. Cen. Ins. Co.* v. *McLanathan*, 11 Kan. 533 ; *Miller* v. *Ins. Co.*, 12 Wall. 296 ; 13 Wall. 222 ; 16 Wis. 257.

An agent of a life insurance company can agree with the insured to pay his dues, and thus bind the company.    May on Insurance, § 360 ; Bliss on Life Insurance, § 296 ; *Miller* v. *Ins. Co.*, 12 Wall. 288 ; *Ins. Co.* v. *Robinson*, 25 Ind. 537 ; 42 Me. 259 ; 35 N. Y. 131 ; *Sheldon* v. *Mut. Life Ins. Co.*, 25 Conn. 207, 542 ; 2 Dutcher, 268 ; 26 N. Y. 460 ; 43 Barb. 351 ; 9 How. 390 ; 19 La. Ann. 214.    An offer to pay dues is sufficient.    Bliss on Insurance, 204 ; 47 Barb. 127.

CHALMERS, J., delivered the opinion of the court.

A. J. McConnico took out a policy of insurance on his own life, in favor of his wife, in the company of the plaintiffs in error. He failed to pay the annual premium due last before his death, and thereby, according to the terms of the policy, it became forfeited. His widow, nevertheless, obtained judgment for the full amount of the policy, on the following state of facts : —

H. L. Duncan was the agent of the plaintiffs in error to solicit insurance throughout a number of counties in the northern part of the state. By the terms of his appointment, which was put in evidence by the plaintiff below (Mrs. McConnico), he had no authority to receive payment of any premiums or dues to the company, save the first one, which was payable at the time of effecting the insurance. All subsequent dues were to be forwarded to the home office.

The system of conducting the business of the company was peculiar : certain sums known as " mortuary dues " were payable by every policy-holder upon the death of any other policy-holder; and a failure to pay these within thirty days after receiving notice from the home office of the death of such other policy-holder worked a forfeiture of the policy. In addition, a small amount called " the annual due " was to be paid yearly.

Duncan lived at Water Valley, and succeeded in obtaining a number of insurances there and in the vicinity. When the parties insured received calls from the home office, which was located at Winona, some of them became accustomed to hand the amounts due to Duncan, who would transmit them to the home office ; but in all cases the receipts were sent back by the company directly to the policy-holders and not to Duncan. Some of the parties who transmitted their dues in this manner testified that they supposed that Duncan had authority to receive them, and by his reception to bind the company. It is impossible to see how they could have been so misled, because in each case the notices which they received, not through Duncan, but directly from the home office, advised them that the money might be sent at the risk of the company, provided it was remitted by express, by registered letter or by postal money-order ; and, as before

remarked, the receipts were sent back directly to them. It is not pretended that McConnico ever remitted his dues in this manner, but, on the contrary, it is affirmatively shown that he always sent them directly to the home office, save the last annual premium, which he failed to pay at all; neither is it pretended that he gave the money for the purpose of making this last payment to Duncan. The proof shows, however, that Duncan was indebted to McConnico, and, upon some occasion, the date of which is not fixed, had promised to pay the sums that might fall due from the latter to the company, so as to keep alive his policy.

From these facts it is argued that although Duncan had no express authority to receive these mortuary and annual dues, yet his habit of doing so being known to and recognized by the company by a reception of them through him, he thereby became invested with such authority; and that, being thus by custom created the agent of the company for that purpose, he had the power to waive an actual payment, and by his own promise to the policy-holder that he would make the payment bind the company as fully as if in fact the money had been paid.

This is certainly pushing the doctrines of implied powers in agents, and of the validity of waivers by them, beyond any thing that we have seen in the books.

It is undoubtedly true that where agents without express authority assume to act for their principals, and the latter, knowing of such assumptions, acquiesce in and receive the benefit of their acts, the principals will be bound, if eventual loss should occur; that from a continued course of such dealings the public will be at liberty to deal with the agents as having original authority to perform the acts, and the principals will be estopped to deny it.

It is no less true that an agent with full authority may, under many circumstances, waive the performance of conditions precedent, and, by such waiver, bind his principal. But we have found no case where a confessedly unwarranted assumption of authority was first held to be conferred through acquiescence, and then an unauthorized waiver by the self-constituted agent was declared obligatory upon the principal,

who, it was admitted, had never heard of or acquiesced in the waiver. We know of no principle or authority which would sanction such a doctrine. But even if the principle was correct, the facts of the case do not meet its requirements.

There is nothing from which an acquiescence by the company in Duncan's right to receive the dues can be inferred. They did receive the money from him, as they would, we presume, have received it through any channel the policy-holder might have selected for its transmission; but there is nothing to indicate that they knew or suspected that the parties were dealing with him as the agent of the company, and there is every thing to show that they regarded him as the agent of the parties making the remittances. They kept no accounts against Duncan, and the calls for the dues were made upon, and the acknowledgments of receipts of payment were sent directly to, the policy-holders. Above all, it does not appear that McConnico knew of Duncan's habit to receive these payments, or that he could have been misled by it. It is affirmatively shown that he always made his remittances directly to the home office, and, for aught that appears in the record, continued so to do after Duncan had agreed to make the payments for him.

Under these circumstances, it is impossible to perceive how the forfeiture by non-payment of the last annual due (we use the word because it seems to be adopted by the corporation) could be prevented by the personal obligation, which Duncan had assumed, of meeting it. The company had no connection with or knowledge of his assumption, and could not be bound by it.

None of the charges given for the plaintiff below were applicable to the facts proved, and should therefore have been refused. The fourth charge asked by the defendant below should have been given.

*Judgment reversed and cause remanded.*